IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JAMES EDWARD LANDRY, JR. | § | |
| | § | |
| v. | § | NO.  A-06-CA-399 AWA |
| | § | |
| MICHAEL J. ASTRUE,[1] | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are:  Plaintiff's Motion to Reverse and/or Remand the Final Decision of the

Social Security Administration (Clerk's Doc. No. 15); Defendant's Brief in Support of the

Commissioner's Decision (Clerk's Doc. No. 18); and Plaintiff's Reply Brief (Clerk's Doc. No. 21).

Also before the Court is the Social Security Record filed in this case (Cited as "Tr.").

### I.  General Background

On March 9, 2004, Plaintiff James Edward Landry, Jr. ("Plaintiff") filed an application for

Supplemental Security Income alleging that he was disabled because of diabetes, emphysema, back

pain, hepatitis, blurred vision, depression and a learning disability.  Tr. 62.  The Commissioner

denied Plaintiff's Application initially and upon reconsideration.  Tr. 25-35.  After Plaintiff timely

appealed the Commissioner's decision, a hearing was held before an Administrative Law Judge on

November 28, 2005.  Tr. 304.  In addition to the Plaintiff, who was represented at the hearing by an

attorney, a vocational expert also testified at the hearing.  After reviewing the evidence of record,

the ALJ issued her decision concluding that Plaintiff is not disabled within the meaning of the Social

Security Act.  Tr. 14-22.  Plaintiff appealed the ALJ's decision to the Appeals Council, which

---

[1]Michael J. Astrue became Commissioner of the Social Security Administration on February 12, 2007.  Therefore, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Jo Anne B. Barnhart as the Defendant in this lawsuit.

affirmed the decision on March 30, 2006.  Tr. 5-7.  On May 30, 2006,  Plaintiff brought this action

for judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

## II. The Hearing

On November 28, 2005, Administrative Law Judge Marguerite Lokey ("ALJ"), held a

hearing on Plaintiff's Application for Benefits.  Plaintiff was represented at the hearing by his

attorney, Iris Gibson.  The Plaintiff and his wife, Valerie Stewart, testified at the hearing.  Terry

VanDerMolen, a vocational expert, also testified at the hearing.

### A.     Plaintiff's Testimony

Plaintiff testified that he was 45 years-old at the time of the hearing.  He further stated that

he attended special education classes when he was young, but later attended "regular classes" until

he dropped out of high school in the eleventh grade.  Plaintiff further testified that he is not a good

reader and that his wife filled out his disability paperwork.  Plaintiff testified that he has not worked

in the last 15 years because he is a diabetic.  Although Plaintiff stated that he applied for various jobs

over the years, he was never hired.  Plaintiff testified that the longest period of time that he was ever

employed in one job was six months.  Plaintiff also stated that he had been fired from most of his

jobs for tardiness and for failing to show up for work.

Plaintiff testified that he suffers from diabetes, Hepatitis C, and emphysema.  Plaintiff

testified that his alleged side effects from the diabetes include severe headaches, cramps, back pain

when he stands up, foot tingling and numbness, poor vision, deafness in his left ear, shortness of

breath, fatigue and depression.  Although Plaintiff testified that he is depressed, he denied having

any suicidal thoughts and reported that his antidepressants make him sleepy.  Plaintiff further

testified that although he has Hepatitis C, he has not required any medical treatment for the disease.

Plaintiff also admitted that in the past he has not followed his physician's advice on how to control his diabetes and thus did not take his insulin on a regular basis and indulged in sweets.  Tr. 318. Although Plaintiff complained of back pain, he also testified that Tylenol alleviates his pain for at least six or seven hours.  Tr. 325.  Similarly, he stated that Tylenol alleviates his headaches as well.

Plaintiff testified that due to his physical impairments, he can only lift about five pounds, stand or sit for three hours and walk for about two blocks.  Plaintiff also testified that in the past he was hit by a car and suffers from residual pain in his left side and hip.

Plaintiff further testified that he had been abusing drugs and alcohol for most of his life, beginning at the age of 10.  Plaintiff stated that he has sought treatment for his drug and alcohol addiction on at least three separate occasions.  Plaintiff stated that he stopped drinking and abusing drugs in March of 2004. Plaintiff testified that he was currently on probation for a robbery conviction.  Plaintiff admitted that he had also been convicted for various drug possession and DWI offenses.  Plaintiff testified that his years of drug and alcohol abuse have affected his memory, concentration and ability to learn.  Plaintiff also admitted that he is a smoker.

Plaintiff testified that he lives with his wife, who is also on disability.  Plaintiff stated that he spends most of his time sleeping, lying in bed and watching television.  However, Plaintiff did admit that he walks to the store and goes grocery shopping with his wife and children.  Other than spending time with his family, Plaintiff stated that he has no social life.

**B.     Plaintiff's Wife's Testimony**

Plaintiff's wife, Valerie Stewart Landry, testified after the Plaintiff at the hearing.  She testified that she has been married to Plaintiff for three years and that she is receiving disability benefits for diabetes and kidney failure.

Mrs. Landry testified that Plaintiff is unable to work because he is "slow."  Tr. 329.  For example, she testified that she had to fill out all of the paper work for Plaintiff's disability application because he did not understand the forms.  However, Mrs. Landry also testified that Plaintiff is able to understand simple instructions and admitted that she frequently gives Plaintiff books and magazines to help "occupy his time." Tr. 331, 335.  Mrs. Landry further testified that Plaintiff is depressed and that he has difficulty getting along with others.

**C.       Vocational Expert's Testimony**

The Vocational Expert ("VE"), Mr. VanDer-Molen, was the final witness to testify at the hearing.  The VE testified that a hypothetical individual with Plaintiff's age, education and work experience, who also has a marginal ability to read and is only able to perform simple repetitive work at the light exertional level, would be able to perform unskilled light work.  The VE further stated that if the above-individual was further limited by the need to work in a clean environment and that hearing was not an essential function of the job, such an individual could still perform light unskilled work such as working as an assembler of small parts, cafeteria attendant, and hotel/motel cleaner. The VE further testified that the hypothetical individual would still be able to perform the above-jobs even if he was illiterate.

However, the VE also stated that the above-hypothetical individual would not be able perform any job if he had to miss at least three days of work per month.  Similarly, such an individual could not perform the above-jobs if he: was unable to complete most tasks in a timely and appropriate manner; was unable to get along with his supervisor; had a problem controlling his violent behavior; could not stand or sit for more three hours a day; or could only lift or carry five pounds.

### III.  The ALJ's Opinion

After review of the medical evidence, consideration of Plaintiff's testimony, the vocational expert's testimony, as well as consideration of Plaintiff's alleged disabling impairments, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.  The ALJ found that Plaintiff had severe impairments of diabetes mellitus, emphysema, Hepatitis C, and borderline intellectual functioning, but that none of those impairments met the Listing of Impairments under the regulations.  The ALJ further found that Plaintiff did not have a severe mental impairment, concluding that Plaintiff "has only mild limitations in his daily activities and social functioning and moderate limitations in concentration, persistence or pace." Tr. 17.  The ALJ further found that Plaintiff's allegations regarding his limitations were not entirely credible based upon the objective medical evidence.

Based upon the evidence of record, the ALJ found that Plaintiff "should work in an unpolluted environment due to his emphysema, is limited to work of light exertion due to fatigue and other exertional symptoms and can perform simple repetitive work despite his mental impairments." Tr. 17.  The ALJ opined that Plaintiff had the residual functional capacity to lift and/or carry a maximum of 20 pounds occasionally and 10 pounds frequently, stand, walk or sit for 6 hours out of an 8-hour workday, but was limited to simple repetitive work in an unpolluted environment. Although Plaintiff could not perform his past relevant work (since he had none), the ALJ opined that Plaintiff had the residual functional capacity to perform a significant range of light work.  Based on the vocational expert's testimony, the ALJ found that Plaintiff could perform the light jobs of small parts assembler, cafeteria attendant, and hotel/motel cleaner.  Accordingly, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act.

## IV. Issues before the Court

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and is not based upon the proper legal standards. While Plaintiff agrees with the ALJ's assessment of his physical impairments, Plaintiff disagrees with the ALJ's assessment of Plaintiff's non-exertional, mental impairments. First, Plaintiff argues that the ALJ's assessment of his residual functional capacity is not supported by substantial evidence. Next, Plaintiff argues that substantial evidence does not support the ALJ's finding that Plaintiff has a high school education. Plaintiff further contends that the ALJ failed to assess Plaintiff's ability to *maintain* employment. Lastly, Plaintiff argues that the ALJ failed to meet her burden at step five of her analysis because the hypothetical question posed to the vocational expert was defective.

## V. Standard of Review

In Social Security disability appeals, the limited role of the reviewing court is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standard. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997); *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Courts weigh four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) her age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

However, the reviewing court cannot re-weigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Martinez*, 64 F.3d at 174. If supported by substantial evidence, the Commissioner's findings are conclusive and are to be affirmed. *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

## VI.  Analysis

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520 (1999). First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment of combination of impairments that is severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to her past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520.

At steps one through four, the burden of proof rests upon the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant acquits her responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment that claimant is capable of performing in spite of her existing impairments. *Id.* If the Commissioner meets this burden, the claimant must then prove she in fact cannot perform the alternate work. *Id.*

**A.**   **Does substantial evidence support the ALJ's finding that Plaintiff can perform sedentary work?**

The ALJ is responsible for determining the claimant's residual functional capacity ("RFC"). *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); 20 C.F.R. § 404.1546. The regulations require the ALJ to determine the RFC of the claimant by considering all of the relevant evidence and addressing the claimant's exertional and non-exertional limitations. *See* 20 C.F.R. § 404.1545; Social Security Ruling 96-8p.

Plaintiff argues that the ALJ failed to properly assess the severity of Plaintiff's non-exertional impairments according to applicable legal standards. Plaintiff contends that the record establishes that Plaintiff's mental impairments are more substantial than those found by the ALJ (*i.e.*, that Plaintiff was merely limited to "simple repetitive work"). Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to: (1) incorporate Dr. Dubin's findings in her RFC determination; (2) consider Plaintiff's alcohol and drug abuse; and (3) consider all relevant evidence.

**1.**   **Dr. Dubin's Report**

Plaintiff first complains that in assessing his RFC, the ALJ failed to fully consider the May 12, 2004 Psychological Consultative Evaluation performed by Dr. William J. Dubin, Ph.D. Tr. 202. Based on Plaintiff's answers to the Wechsler Adult Intelligence Scale test (WAIS-III), Dr. Dubin

assessed that Plaintiff had a Full Scale IQ score of 76, indicating a general intellectual functioning within the borderline range. Tr. 205.  The Wide Range Achievement Test showed that Plaintiff was reading at the second grade level, spelling at the third grade level, and doing arithmetic at the fourth grade level.  Plaintiff points out that Dr. Dubin found that Plaintiff could not complete most tasks timely and appropriately; had poor judgment and poor insight; had a long history of substance abuse; had longstanding cognitive, academic and substance abuse problems; had poor behavioral controls; has limited job skills; was deficient in reading, writing, and computational skills; and had deficiencies in persistence and gave up easily when challenged.  Dr. Dubin diagnosed Plaintiff with cocaine and alcohol dependence (in early full remission), Cannabis abuse, borderline intellectual functioning, a GAF[2] of 50, Hepatitis C, diabetes, CPD and back and knee problems.  Tr. 207.  Dr. Dubin found Plaintiff's prognosis to be poor, noting that Plaintiff "appears to have longstanding cognitive, academic, and substance abuse problems." Tr. 207.  Dr. Dubin noted that Plaintiff has limited job skills and "does not appear motivated to return to employment." Tr. 207.  While Dr. Dubin found that Plaintiff was capable of understanding the meaning of filing for benefits, he opined that Plaintiff "does not appear capable of managing benefit payments in his own interest due to poor judgment and history of substance dependence." Tr. 207.

Plaintiff complains that the ALJ ignored the above-findings from Dr. Dubin's report and should have determined that Plaintiff's mental limitations would significantly limit his ability to perform any work.  First, the Court notes that the ALJ was not required to give Dr. Dubin's opinions "controlling weight" under the regulations since Dr. Dubin was not Plaintiff's treating physician but

---

[2]GAF is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning." *Boyd v. Apfel*, 239 F.3d 698, 701 n. 2 (5th Cir. 2001) (quoting AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994)(DSM-IV)).

instead a consultative psychologist who examined Plaintiff on one occasion.  *See* 20 C.F.R.

§ 416.902 & 416.907(d)(2).  Moreover, while the regulations provide that all medical opinions are

to be considered in determining the disability status of a benefits claimant, 20 C.F.R. §§ 404.1527(b),

416.927(b),  opinions on ultimate issues, such as disability status are reserved exclusively to the ALJ.

20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).  The ALJ has the sole responsibility for determining a

claimant's disability status and the  ALJ "will not give any special significance to the source of an

opinion on issues reserved to the Commissioner" including a claimant's residual functional capacity,

which is a finding expressly reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e); *Cain v.*

*Barnhart*, 193 Fed. Appx. 357, 360 (5th Cir. 2006).  Thus, any opinion from Dr. Dubin regarding

Plaintiff's disability determination or his RFC is not entitled to any special significance under the

regulations. *See Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir. 2007) (finding that

physician's statement that claimant was disabled was not entitled to any special significance under

the regulations).

Regardless, the ALJ clearly considered Dr. Dubin's report in her analysis of Plaintiff's

impairments. *See* Tr. 16.  For example, in her Opinion, the ALJ discussed Dr. Dubin's findings in

great detail, including his assessment of Plaintiff's IQ, GAF and Plaintiff's prognosis.  In fact, the

ALJ adopted Dr. Dubin's finding that Plaintiff had borderline intellectual functioning. See. Tr. 17.

While the ALJ considered these aspects of Dr. Dubin's report, she also noted that Dr. Dubin's report

contained findings showing that Plaintiff would be capable of performing "simple repetitive light

work."  For example, Dr. Dubin noted in his report that Plaintiff's demeanor was polite, deferential

and cooperative.  Tr. 204.  In addition, Dr. Dubin found that Plaintiff's receptive communication

seemed intact and noted that Plaintiff "put forth a good effort on the testing, although he became

frustrated when challenged." Tr. 204.  In addition, Dr. Dubin noted that Plaintiff described his mood

as "Lazy, I guess.  I have no energy." Tr. 204.  Dr. Dubin further noted that Plaintiff denied having

any suicidal thoughts or manic episodes, and noted that there was no evidence that Plaintiff had any

compulsions or phobias.  Dr. Dubin further noted that Plaintiff reported that his sleep and appetite

were "pretty good." Tr. 204.  Regarding his stream of mental activity, Dr. Dubin found Plaintiff's

thought processes to be within normal limits.  Tr. 205.  Dr. Dubin further noted that Plaintiff could

name the current and previous United States Presidents, and was able to recall his social security

number and date of birth.  Dr. Dubin further found that Plaintiff's concentration was within normal

limits.  Tr. 205.  Dr. Dubin also noted that Plaintiff had reported that he is able to take care of his

own personal hygiene, cook for himself, perform most housekeeping tasks, drive a car, shop for

groceries, and count money independently.  Tr. 206.  Dr. Dubin also noted that Plaintiff "seems to

understand and carry out simple instructions without much difficulty." Tr. 206.  Dr. Dubin also

added that Plaintiff "does not appear motivated to return to employment." Tr. 207.  All of these

findings by Dr. Dubin's support the ALJ's conclusion that Plaintiff would be capable of performing

simple repetitive light work.  Thus, the ALJ properly considered Dr. Dubin's report in her RFC

analysis.

>2.     **Plaintiff's history of drug and alcohol abuse**

Plaintiff also argues that the ALJ's RFC determination is not supported by substantial

evidence because the ALJ failed to consider whether Plaintiff's alcohol and drug abuse constitute

severe impairments.  Under 42 U.S.C. § 423(d)(2)(C), a claimant cannot receive disability benefits

"if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's

determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).  Congress adopted this

amendment in 1996 as part of the Contract with America Advancement Act ("CAAA"), Public Law 104-121, the purpose of which was "to *discourage* alcohol and drug abuse, or at least not to encourage it with a permanent government subsidy." *Ball v. Massanari*, 254 F.3d 817, 824 (9th Cir. 2001).  Under the implementing regulations for the CAAA, if a finding is made by the ALJ that a claimant is disabled, and there is evidence of drug addiction or alcoholism, the ALJ must then determine whether the drug addiction or alcoholism is a "contributing factor material to the determination of disability. . . ." 20 C.F.R. § 416.935(a).  The claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor material to her disability.  *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999).  If the claimant's drug addiction or alcoholism is a contributing factor material to his disability, then an award of benefits must be denied. 20 C.F.R. § 416.935(b); 42 U.S.C. § 423(d)(2)(C).

In the instant case, the ALJ determined that Plaintiff was *not* disabled based on the medical evidence.  Thus, the ALJ was not required to apply the above-regulations to determine whether Plaintiff's drug addiction or alcoholism was a contributing factor to the disability determination. *See Lawrence v. Barnhart*, 2002 WL 356316 * 4 (E.D. La. March 4, 2002).  Moreover, any suggestion by Plaintiff that he should have been considered disabled due to alcohol or drug abuse would be counterproductive, since the statute specifically precludes a claimant from receiving disability benefits if alcoholism or drug addiction are contributing factors to the Commissioner's disability determination.

Finally, the Court rejects Plaintiff's claim that the ALJ ignored Plaintiff's substance abuse problem and its effect on Plaintiff's RFC.  In her Opinion, the ALJ noted that Plaintiff had a long history with drug and alcohol abuse and had sought treatment on several occasions. Tr. 15-16.  The

ALJ noted that the medical records showed that Plaintiff had reported that he stopped abusing drugs and alcohol after his last conviction.  Tr. 16.  In fact, Plaintiff testified during the hearing that he stopped abusing drugs and alcohol in March of 2004 and that he had passed all of his probation-related drug tests.  Tr. 326-27.  As noted earlier, the burden of proof rests upon the claimant at step two to show that he suffers from a severe impairment.  *See Crowley*, 197 F.3d at 198.  Based upon the foregoing, the Court finds that the evidence supports the ALJ's conclusion that Plaintiff did not suffer from severe impairments of alcoholism and drug abuse.

3.      **Did the ALJ consider all relevant evidence**

Plaintiff also argues that the ALJ failed to consider all relevant evidence in her assessment of Plaintiff's RFC.  Specifically, Plaintiff again argues that the ALJ ignored the evidence showing that Plaintiff had a low IQ score and a GAF of 50, Dr. Dubin's report, and discredited any assertion that Plaintiff was depressed.  Because the Court has already addressed Dr. Dubin's report (including his assessment of Plaintiff's GAF),  the Court will discuss Plaintiff's borderline intelligence and his alleged depression.

Dr. Dubin assessed Plaintiff with a verbal IQ of 76, performance IQ of 79, and full scale IQ of 76, and determined that Plaintiff was in the borderline range of intellectual functioning.  Tr. 205.  The ALJ agreed with these findings and similarly concluded that Plaintiff has borderline intellectual functioning.  Tr. 17.  Plaintiff argues that his low IQ scores demonstrate that he is not capable of performing the jobs identified by the vocational expert.  First, the Court notes that "below-average intelligence alone does not constitute a non-exertional impairment." *Johnson v. Sullivan*, 894 F.2d 683, 686 (5th Cir. 1990).  Although mental retardation qualifies as a non-exertional impairment under the Listing of Impairments, the evidence of record does not indicate that Plaintiff is mentally

retarded.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.[3]  Moreover, Plaintiff has failed to

demonstrate that his low IQ scores prevent him from performing the jobs identified by the ALJ.  In

fact, the vocational expert testified that even if the hypothetical individual were illiterate, he or she

could still perform the jobs of small parts assembler, cafeteria attendant and hotel cleaner. Tr. 339.

Based upon this testimony and other evidence in the record, the Court finds that substantial evidence

supports the ALJ's conclusion that Plaintiff's borderline intelligence did not prevent him from

performing the jobs identified by the vocational expert.  *See Selders v. Sullivan*, 914 F.2d 614, 619

(5th Cir. 1990) (holding that claimant's below-average IQ of 72 did not mean that claimant was

entirely unable to perform light or sedentary work).

Plaintiff also argues that the ALJ should have found that he suffers from a severe impairment

of depression.  While the ALJ acknowledged that there was evidence that Plaintiff suffered from

depression, she concluded that the evidence did not support a finding this was a severe impairment.

The ALJ noted that Plaintiff had not sought treatment from a psychologist or psychiatrist for his

depression and further noted that the consulting psychologist did not find that Plaintiff suffered from

significant depression.  The ALJ found that Plaintiff's allegations regarding his limitations were not

entirely credible in light of the evidence in the record.   Substantial evidence in the record supports

the ALJ's finding that Plaintiff does not suffer from severe debilitating depression.

Although the record shows that Plaintiff reported to his treating physician that he was

depressed on several occasions, no physician suggested that Plaintiff was disabled due to his

---

[3]To meet Listing 12.05 for mental retardation, an individual (1) must have "significantly
subaverage general intellectual functioning with deficits in adaptive functioning initially manifested
during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment
before age 22" *and* (2) must satisfy the criteria listed in Subsection A, B, C, or D.  20 C.F.R. pt. 404,
subpt. P, app. 1, § 12.05.  The required level of severity for mental retardation is met when the
claimant has a "valid verbal, performance, or full scale IQ of 59 or less."  *Id.* at §12.05(B).

depression.  Notably, after examining Plaintiff, the consultative psychologist, Dr. Dubin, did not

diagnose Plaintiff with depression.  Tr. 207.  In fact, Dr. Dubin's report noted that Plaintiff had

denied ever being hospitalized for psychiatric reasons and denied ever taking psychotropic

medications. Tr. 203.  Plaintiff also reported to Dr. Dubin that his sleep and appetite were "pretty

good." Plaintiff's admissions to Dr. Dubin regarding his activities of daily living, such as being able

to cook, shop and perform household tasks on his own, are inconsistent with Plaintiff's allegations

that he suffers from severe debilitating depression.  Although Plaintiff testified during the hearing

that he is depressed and that he was currently taking antidepressants, he denied having any suicidal

thoughts.  Tr. 313.  While Plaintiff testified that his antidepressants make him sleepy, there is no

indication in the record that the antidepressants did not help his depressive symptoms.  Based upon

the foregoing, the Court finds that the ALJ's conclusion that Plaintiff did not suffer from a severe

impairment of depression is supported by substantial evidence.

**C.      The ALJ's finding as to Plaintiff's Education**

Plaintiff argues that substantial evidence does not support the ALJ's disability determination

in this case because the ALJ made an erroneous finding that Plaintiff has a high school education.

Although Plaintiff testified during the hearing before the ALJ that he dropped out of high school in

the eleventh grade,[4] the ALJ erroneously stated in her opinion that Plaintiff had a "12th grade

education" or a "high school (or high school equivalent) education." *See* Opinion at 2, 7, 8.   The

Commissioner does not dispute and the record before the Court supports Plaintiff's allegation that

he dropped out of high school in the eleventh grade.  *See* Tr. 203, 289.  Thus, the ALJ did in fact

make an erroneous finding that Plaintiff graduated from high school.  However, the Fifth Circuit has

---

[4]*See* Tr. 307.

held that procedural perfection in administrative proceedings is not required and that a judgment should not be vacated unless the substantial rights of a party have been affected. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Thus, reversal or remand is appropriate only if the applicant shows prejudice arising from the ALJ's error. *Gonzales-Sargent v. Barnhart*, 2007 WL 1752057 at * 9 (W.D. Tex. June 15, 2007).

Plaintiff has failed to demonstrate that he was prejudiced by the error contained in the ALJ's Opinion regarding his educational level. Plaintiff does not allege that he would have been deemed disabled but for the ALJ's finding that he has a high school education. As already noted, the ALJ's decision contained an extensive discussion of the Plaintiff's intellectual limitations. And despite the erroneous finding, the ALJ's hypothetical posed to the vocational expert did not contain a similar error. The ALJ asked the vocational expert to consider whether a hypothetical individual "with the claimant's age, education and work experience" and a "marginal ability to read" would be able to perform any simple, repetitive jobs at the light exertional level. Tr. 335. In response, the vocational expert testified that such an individual could perform the jobs of small parts assembler, cafeteria attendant and hotel/motel cleaner. Tr. 335-36.[5] The vocational expert further testified that even if the hypothetical claimant were illiterate, he would still be able to perform such jobs. Tr. 339. Plaintiff has failed to show how his "less than high school" education affects his ability to perform the jobs identified by the vocational expert. *Harper v. Barnhart*, 176 Fed. Appx. 562, 567 (5th Cir. 2006) (holding that claimant failed to demonstrate how her "less than high school" education affected her ability to perform the jobs suggested by the vocational expert); *Perez v. Barnhart,* 415

_____

[5]It is important to note that the vocational expert was present during the portion of the Plaintiff's testimony in which he stated that he did not finish high school.

F.3d 457, 464 (5th Cir. 2005) (same).  Based upon the foregoing, Plaintiff has failed to shown that

he was prejudiced by the error regarding his educational level contained in the ALJ's findings.

**D.      Was the hypothetical question defective?**

Plaintiff next argues that the ALJ erred at step five of her analysis because the hypothetical

question posed to the vocational expert was defective because it: (1) misstated that Plaintiff has a

high school education, and (2) failed to properly account for Plaintiff's non-exertional limitations.

First, the Court notes that Plaintiff is mistaken in his assertion that the hypothetical misstated that

Plaintiff has a high school education.  As explained above, the ALJ's hypothetical question asked

the vocational expert to consider a hypothetical individual with the "claimant's age, education and

work experience," without detailing what that education level was, and the VE was present when the

Plaintiff testified that he had not finished high school.

Plaintiff's second argument is also without merit.   In the Fifth Circuit, the test for

determining when a defective hypothetical question posed to a vocational expert by the ALJ will

produce reversible error is the following:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be
> said to incorporate reasonably all disabilities of the claimant *recognized by the ALJ*,
> and the claimant or his representative is afforded the opportunity to correct
> deficiencies in the ALJ's question by mentioning or suggesting to the vocational
> expert any purported defects in the hypothetical questions (including additional
> disabilities not recognized by the ALJ's findings and disabilities recognized but
> omitted from the question), a determination of disability will not stand.

*Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. l994) (emphasis added).

In the instant case, although the ALJ did find that Plaintiff suffered from some mental

limitations which would restrict him to simple repetitive work, she did not find that Plaintiff suffered

from severe mental limitations which prevented him from working entirely.  Thus, the ALJ did not

include in her hypothetical question that Plaintiff's mental limitations prevented him from engaging in all work activity. The hypothetical question presented to the vocational expert by the ALJ accurately reflected the limitations "recognized by the ALJ." In addition, Plaintiff and his lawyer were given an opportunity to correct any defect in the hypothetical question. Accordingly, Plaintiff's complaints with regard to the hypothetical question are without merit.

## E.    Ability to maintain employment

Lastly, the Plaintiff argues that the ALJ erred by failing to make a finding that Plaintiff could not only obtain, but also *maintain* employment for a significant period of time. In support of this argument, Plaintiff relies on the Fifth Circuit's holding in *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002) and *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). *Watson* and *Singletary*, however, have been interpreted to apply only in cases in which a claimant can work for short periods of time, but cannot hold a job for long periods of time. *See Frank v. Barnhart*, 326 F.3d 618, 621 (5th Cir. 2003). The holdings of *Watson* and *Singletary* apply in cases where the claimant's intermittently recurring symptoms are of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time. *Id*. at 619. "*Watson* requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Id*. Without such a showing, the claimant's ability to maintain employment is subsumed in the RFC determination. Thus, the ALJ does not have to articulate separate and distinct findings that the applicant can obtain *and maintain* the job over a sustained period of time in *every* case. As the Fifth Circuit has explained:

> *Singletary* simply interpreted "disability" under the Act to apply to cases in which a person could work for short periods, but could not hold a job. It did not require . . . separate findings on "obtaining" and "maintaining" a job in every case, even cases

in which the applicant does not suggest that there is any difference between the issue
of his ability to work and his ability to sustain work.

*Id.* at 621-22. *See also, Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) ("We do not

understand *Watson* . . . to require an explicit finding in every case that the claimant can not only

engage in substantial gainful activity but maintain that employment as well.").

In the instant case, Plaintiff is not alleging that he can work for only short spans of time, but

rather that his impairments prevent him from working entirely.  Thus, *Watson* does not apply to the

instant case.  Accordingly, the ALJ was not required to make a specific finding in this case that

Plaintiff could also maintain employment.

### VII.  Conclusion

The Court finds that the Commissioner's decision that Plaintiff is not disabled within the

meaning of the Social Security Act is supported by substantial evidence in the record and is based

upon the proper legal standards.  Accordingly, the Magistrate Court **AFFIRMS** the final decision

of the Commissioner and the Court will enter judgment in a separate document issued this same day.

SIGNED this the 7th day of September, 2007.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE